IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY<br>310 East Fourth Street, 15S<br>Cincinnati, OH 45202<br><br>　　　　Plaintiff,<br><br>-vs-<br><br>FARMERS ALLIANCE MUTUAL INSURANCE COMPANY<br>1122 North Main Street<br>McPherson, KS 67460<br><br>　　　　Defendant. | Case No.: 1:18-cv-00008<br><br>Judge:<br><br>**COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY ESTOPPEL, UNJUST ENRICHMENT, EQUITABLE INDEMNITY, AND QUANTUM MERUIT**<br><br>**[JURY DEMAND INDORSED HEREON, FED.R.CIV.P. 38]** |

1.　　Plaintiff Great American Insurance Company ("Great American") alleges as follows:

## PARTIES

2.　　Great American is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Cincinnati, Ohio.

3.　　Farmers Alliance Mutual Insurance Company ("FAMIC") is a corporation organized and existing under the laws of the State of Kansas, with its principal place of business in McPherson, Kansas.

## JURISDICTION AND VENUE

4.　　Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as the parties are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claim occurred in this judicial district, and the parties agreed that the federal court sitting in Hamilton County, Ohio shall have non-exclusive jurisdiction over any disputes or claims arising out of or in connection with one of the agreements at issue.

## BACKGROUND

6. This case involves a request by Great American to recover from FAMIC the attorneys' fees and expenses incurred in the defense of *POCO, LLC, Plaintiff, v. Farmers Crop Insurance Alliance, Inc., Defendant*, United States District Court, Eastern District of Washington, Case No. 4:14-cv-05106-SAB, and on appeal to the Ninth Circuit Court of Appeals, Case No. 16-35310 ("the *POCO* 2014 action").

7. As of September 21, 2005, FAMIC owned all issued and outstanding shares of capital stock in Farmers Crop Insurance Alliance, Inc. ("FCIA").

8. On September 21, 2005, FAMIC and Great American entered into a Stock Purchase Agreement in which Great American purchased from FAMIC all issued and outstanding shares of capital stock in FCIA.

9. FAMIC and Great American entered into a Transition Services Agreement effective September 30, 2005. A true and correct copy of the Transition Services Agreement is attached hereto as Exhibit A. Certain provisions of the Transition Services Agreement provide:

> 2. <u>Agreement to Provide Services</u>. During the Term of this Agreement, GAI shall provide such services as FAMIC may from time to time reasonably request so that multiple peril crop insurance business written by FAMIC prior to July 1, 2005 and crop-hail insurance business written by FAMIC prior to January 1, 2006 and livestock insurance business written prior to July 1, 2005 (the "Prior Business"), shall be serviced in the same manner as comparable business was serviced by FAMIC in the ordinary

        course of FAMIC's business prior to the Effective Date ("FAMIC's Ordinary Course") and in compliance with applicable law. Such services (the "Services") may include, without limitation, claims handling, accounting, processing, filing and data processing services.

3.    <u>Claims Handling Services</u>. The Services will include the claims handling services described in greater detail in this Section 3.

       The parties agree that GAI shall provide the following claims handling services to FAMIC for claims arising out of Prior Business:

    A.    Provide complete handling of all loss adjustments, investigations, compliance issues and settlements of reported claims in accordance with applicable laws. Settlement shall only be effective by GAI upon the receipt of the approvals required from FAMIC under the claims handling protocol to be jointly developed by the parties and attached to this Agreement and incorporated herein as Exhibit B (the "Claims Handling Protocol").

* * *

    F.    Unless otherwise provided on Exhibit B, engage the services of persons or firms outside GAI's organization with the prior written approval of FAMIC (which approval shall not be unreasonably withheld, delayed or conditions) for work in connection with investigations and adjustment of claims and to incur other Allocated Loss Adjustment Expense.

* * *

    H.    Unless otherwise provided on Exhibit B, promptly provide FAMIC with copies of any inquiry, complaint or request received from an insurance department, other regulatory agency, client, claimant, agent, broker or other interested party relating to a claim under Prior Business serviced under this Agreement, consulting as necessary with FAMIC to prepare a response.

* * *

4.    <u>Payments of Prior Business Claims and Related Expenses</u>. All adjustments and settlements of claims relating to Prior Business and all costs and expenses incurred by GAI in connection therewith shall be promptly paid by FAMIC in accordance with the

          provisions of the Claims Handling Protocol. Nothing in this Agreement shall be deemed to effect a transfer of liability for such claims and expenses from FAMIC to GAI.

    5.      <u>Consideration</u>. As consideration for the Services provided by GAI hereunder FAMIC shall pay a fee to GAI equal to all direct costs and expenses incurred by GAI in providing such Services, including, without limitation, all out-of-pocket costs for outside vendors for hardware and software support and all in-house and outside employee cost, plus an operating charge equal to Twenty Five percent (25%) of such total costs and expenses. Fees shall be invoiced by GAI and paid by FAMIC quarterly and shall be due and payable ten (10) days after delivery to FAMIC of GAI's invoice.

## HISTORY

**2003 Policy, Crop Year Claim, Arbitration, Declaratory Judgment Action, Appeal, and Settlement**

10.    FAMIC, while FCIA was still owned by FAMIC, issued one or more insurance policies to POCO, LLC, for the 2003 crop year.

11.    In early 2004, while FCIA was still owned by FAMIC, POCO's agent, Conover Insurance, submitted a Notice of Loss to FCIA and FAMIC on behalf of POCO relating to the 2003 crop year. For the 2003 crop year, FAMIC was the insurer and FCIA was FAMIC's agent.

12.    In its claim relating to the 2003 crop year, POCO reported zero planted acres of potatoes in Benton County, Washington, but the claim adjuster discovered 78 acres of potatoes seeded in Benton County. Since POCO did not insure all its eligible potatoes, it was not a "qualifying person" as required by its policy. FCIA denied the 2003 crop loss claim by letter dated June 10, 2004, and returned POCO's 2003 premium. POCO demanded arbitration, and the parties proceeded to an arbitration hearing over that denial determination. The arbitrator decided in favor of POCO and awarded it indemnity in the amount of $1,454,450, plus interest, under the FAMIC policy.

13. FCIA sought judicial review of the arbitration decision in the Eastern District of Washington. The court upheld the arbitrator's award. FCIA appealed to the Ninth Circuit. The Ninth Circuit sent the case to mediation. Before the mediation, the Federal Crop Insurance Corporation informed FCIA that the claim was eligible for reinsurance if FCIA dismissed the appeal or settled the claim.

14. FCIA, FAMIC, and POCO then reached a settlement whereby FCIA and FAMIC agreed to pay POCO $1,400,000 in return for a mutual release of claims. The parties executed a Mutual Release on November 21 and 22, 2005, respectively. The Mutual Release released all current and future claims related to the insurance policies and the handling of the 2003 claim.

**Criminal Indictment Brought by the United States of America**

15. On January 11, 2011, the United States Department of Justice filed a criminal indictment against POCO's principal, Mark Peterson, alleging that POCO or its agents intentionally concealed or misrepresented material facts relating to the 2003 crop insurance policy, among others, and sought restitution of the payment made to POCO through the Mutual Release. A Superseding Indictment was filed on November 8, 2011 against Peterson and POCO. The United States alleged that various insurance claims, including the 2003 insurance claim which was resolved by the Mutual Release, were false and fraudulent loss claims for crop insurance indemnity. The $1,400,000 settlement was specifically identified in the Superseding Indictment at ¶ 5(h). Count 7 of the Superseding Indictment asserted violations of 18 U.S.C. § 1014 and 18 U.S.C. § 2 in connection with Peterson's and POCO's "knowingly ma[king] a false statement and report and willfully overvalued property for the purpose of influencing the action of the Federal Crop Insurance Corporation and companies it reinsures" regarding the 2003 crop loss.

16. During its prosecution of the criminal action, the government introduced as evidence numerous documents which were part of the insurance claim for the 2003 crop loss that was arbitrated and then reviewed by the Eastern District of Washington. These exhibits from the insurance claim for the 2003 crop loss upon which the government relied reveal that the criminal indictment and prosecution followed directly from, related back to, and would not have occurred but for the insurance claim for the 2003 crop loss, which involved both FCIA as the adjuster and FAMIC as the insurer.

17. Ultimately, the criminal claims against Peterson were dismissed.

**The *POCO* 2014 Action**

18. POCO filed the *POCO* 2014 action against FCIA on or about September 4, 2014, in state court in Washington, claiming that, given the criminal action discussed immediately above, FCIA made material misrepresentations about its settlement authority and, thereby, breached the Mutual Release. POCO alleged that, since the United States denied that the Mutual Release authorized FCIA or FAMIC to release the Federal Crop Insurance Corporation, then FCIA made gross and material misrepresentations as to both its authority and the scope of the Mutual Release. POCO alleged causes of action for breach of contract, material misrepresentation, unfair and deceptive acts or practices (RCW 19.86.02 and RCW 19.86.093), and the "ABC Rule" (equitable indemnification).

19. FCIA received notice of the *POCO* 2014 action on or about September 8, 2014. It provided notice immediately to FAMIC, which acknowledged receipt on September 17, 2014. FCIA retained Sanders & Associates, LPA, to serve as lead counsel in the defense of the *POCO* 2014 action, with the help of local counsel in Washington. FCIA removed the case to the Eastern District of Washington.

20. Throughout the *POCO* 2014 action, POCO asserted that its allegations against FCIA related back to the original handling of the 2003 claim, which was handled by FCIA in its capacity as MGA of FAMIC during a time (except for the last few weeks) that FAMIC owned FCIA. POCO's arguments far exceeded a claim that FCIA breached the Mutual Release; POCO accused FCIA and FAMIC, through their lawyer, of in essence "conspiring" with the federal government during the handling of the 2003 crop claim. In pursuing partial summary judgment, POCO argued:

> The basis for the unsuccessful criminal indictment included the same alleged deceit in POCO's insurance claim which FCIA fully released. Indeed, far from ending the litigation threat, POCO's acceptance of FCIA's settlement check was specifically listed in the indictment as a criminal overt act by POCO. The Department of Justice, set into motion by FCIC/RMA, demanded the settlement payment back. In the course of the criminal trial, POCO learned from the documents produced by FCIA that when FCIA's lawyer drafted the release, he knew that FCIC was at least considering pursuing that restitution remedy.

POCO's Reply in Support of Motion for Partial Summary Judgment [ECF No. 48, 2-3 of 19]. Later in the same brief, POCO stated:

> Contrary to FCIA's responsive Statement of Material Facts (ECF No. 38), the evidence submitted by POCO shows that as early as May 2005, FCIA was working with its reinsurer FCIC to help gin up the criminal case against POCO based on the supposed problems with the 2003 AGR insurance claim. At the criminal trial, FCIA's counsel Mr. Raekes [John Raekes is the attorney in Washington state retained by FCIA while it was owned by FAMIC to handle the arbitration and declaratory judgment action in the Eastern District of Washington for FAMIC and FCIA relating to the 2003 claim] testified about a 1.75 hour conference call on May 12, 2005 between lawyers for FCIA and FCIC/RMA. App. 1 at 219, 229. Mr. Raekes discussed a handwritten record of the meeting, submitted here at App. 1, pp. 91-94, which had been produced in discovery in the criminal trial and filed therein attached to the defendants' pre-trial memorandum (Case No. 11-cr-06001, ECF No. 184). App. 1 at 231-35. These notes show that those attorneys discussed all the pending, disputed claims of later co-defendants, Olsen Ag, and Gordon Brothers, including the POCO 2003 AGR claim, which, the notes confirm, RMA had requested FCIA not to pay, and as to which RMA's attorney Michael

> Hand suggested that they "get letter from OIG to stop payment." App. 192-93.
>
> * * *
>
> When RMA's lawyer and FCIA's lawyer discussed going to OIG about POCO's insurance claim, they were gearing up to pursue POCO through prosecution. Mr. Raekes expressly confirmed that they did discuss the 2003 AGR claim at that meeting, App. 1 at 232, and further confirmed that there were follow up discussions with the "criminal component" of the Department of Justice about the 2003 AGR claim. App. 1 at 240-41, 262:8-13.

POCO's Reply in Support of Motion for Partial Summary Judgment.

21. Despite POCO's arguments, the district court granted FCIA's motions for summary judgment, and simultaneously denied the motion for partial summary judgment filed by POCO. FCIA then filed a motion for attorneys' fees on April 8, 2016, citing language in the Mutual Release that requires the court to award attorney's fees to FCIA as the prevailing party in this suit. The court granted FCIA's motion, awarding $282,151.50 in attorney's fees and costs, $805 for statutory costs, and $5,434.85 for necessary expenses.

**Ninth Circuit Affirmance of Judgment In The *POCO* 2014 Action**

22. POCO continued its same assault in the Ninth Circuit, asserting that the criminal prosecution which formed the basis of that appeal related back to the handling of the 2003 crop loss by FCIA, in its capacity as MGA of FAMIC. In its Opening Brief (Docket 14) in the Ninth Circuit, POCO charged:

> Consistent with POCO's briefs, Counsel [for POCO] responded [to questions by the District Court below] that among other things, FCIA had clearly acted as the Department [of Justice]'s agent, and at the very least was materially misleading and deceptive in representing that it was authorized by RMA to settle and release claims, while failing to disclose to POCO the material fact that criminal charges were being actively investigated and the settlement was little more than a ruse to entrap POCO. ER 801, 803-04. [Had] POCO been armed with that knowledge, he argued, POCO would have had a fair opportunity to demand direct involvement of the Government in the settlement process and assurance that no criminal charges were pending, or alternatively to proceed with

- 8 -

> litigation and get a preclusive order from this court establishing that it had a right to recover on its insurance claims. ER 798, 813-816.

Docket at 14, page 12-13 of 24.

23. The Ninth Circuit affirmed on October 23, 2017.

24. Defense counsel Sanders & Associates LPA timely presented an application to recover the additional attorneys' fees and costs incurred in defending against the Ninth Circuit appeal, which application remains pending.

**Communications With FAMIC While *POCO* 2014 Action Pending**

25. In addition to FCIA providing timely notice of the *POCO* 2014 action to FAMIC, which acknowledged receipt on September 17, 2014, there were many communications between Great American, defense counsel Sanders & Associates LPA, and FAMIC during the pendency of the *POCO* 2014 action, including:

- On September 17, 2014, FAMIC asked Great American for the potential risk in this case so that FAMIC "can nail down an amount and the likely outcome."

- On October 6, 2014, FAMIC instructed Great American to pay defense counsel Sanders & Associates LPA directly and then bill FAMIC.

- On July 9, 2015, FAMIC asked defense counsel Sanders & Associates LPA for a cost estimate for the matter going forward.

- On February 2, 2016, FAMIC contacted defense counsel for a status update. There were several follow-up communications over the next several weeks regarding issues pertinent to the defense. Included in those communications was a statement by defense counsel: "However, Great American is also conscious of the fact that Farmers Alliance is ultimately responsible for the cost of the matter," to which FAMIC did not express disagreement. On April 8, 2016, FAMIC

confirmed to defense counsel that "Farmers Alliance agrees with your decision to file the motion for fees and costs and agrees with the decision not to seek sanctions."

- On August 23, 2017, Great American sent an email to FAMIC, stating: "I hope all is well. We have a significant number of invoices associated with the Polo [sic], LLC case that Great American has paid on behalf of FAMI. I sent an e-mail near the end of 2015 and did not receive a response. [¶] Should I send the billing, along with copies of unpaid invoices, to you or is there someone else to contact?" FAMIC responded the same day: "Mike, Please send me the invoices. Hope all is well. Thanks Paul."

26. Great American has demanded that FAMIC promptly reimburse Great American $560,206.86, plus applicable interest. The amount of $560,206.86 represents (1) the attorneys' fees and costs incurred to date in defending FCIA, in the *POCO* 2014 action and (2) the 25% operating charge called for in the Transition Services Agreement.

27. Great American has also demanded that FAMIC agree to promptly reimburse Great American for any additional attorneys' fees and costs that may be incurred in the future in defending FCIA in the *POCO* 2014 action, plus any additional operating charge.

28. As stated above, the district court in the *POCO* 2014 action awarded attorneys' fees and costs to FCIA in the amount of $288,391.35, and counsel for FCIA has timely moved the Ninth Circuit to award attorneys' fees and costs necessitated by the appeal. Great American has offered, in the event any amount, net of attorneys' fees and costs incurred to collect, is recovered by Great American after FAMIC makes the reimbursement required, to ensure that these funds are paid over to FAMIC.

### FIRST CAUSE OF ACTION – BREACH OF CONTRACT

29. Great American realleges, as if fully restated herein, each of the preceding paragraphs.

30. Great American has performed all of its obligations under the Transition Services Agreement.

31. Under the Transition Services Agreement, FAMIC is obligated to reimburse Great American for all the fees and expenses incurred or to be incurred in the defense of the *POCO 2014* action, as well as for the 25% operating charge, for at least the following reasons:

- The 2003 crop loss insurance claim which settled in November 2005, as memorialized in the Mutual Release releasing both FCIA and FAMIC, was a claim which arose out of Prior Business as defined in the Transition Services Agreement.

- The 2003 crop insurance claim was presented to FAMIC in 2004, before the Stock Purchase Agreement and the Transition Services Agreement were even contemplated, much less executed.

- The settlement resolved a claim under a policy issued by FAMIC, which FAMIC was required to fund, subject to recovery from the Federal Crop Insurance Corporation.

- FAMIC itself is a party to the Mutual Release, the document which memorialized the settlement of the claim.

- All of the proceedings, culminating in the *POCO* 2014 action, were directly related to the adjustment and ultimate settlement of the 2003 crop loss claim. POCO sued FCIA based on alleged representations made in the Mutual Release.

- 11 -

FAMIC itself was a party to the Mutual Release. FAMIC issued the policies which formed the basis of the underlying claim in 2003. FAMIC was obligated to pay the underlying claim. FAMIC's funds were used to settle the claim. The Mutual Release is part and parcel of handling the Prior Business as defined in the Transition Services Agreement.

- The criminal proceeding which followed the settlement of the 2003 crop claim for $1,400,000 related directly to the handling of the 2003 crop claim. The *POCO* 2014 action, which complained about the criminal proceeding, related directly back to the 2003 crop claim. POCO took the position in the *POCO* 2014 action that FAMIC, FCIA, and the appointed defense counsel were aware of the potential criminal action even while negotiating the settlement of the 2003 crop claim. In the absence of the 2003 claim under FAMIC's policy, the Mutual Release would not have been entered into in the first place, and none of the subsequent litigation would have ensued. Although the arbitration and subsequent lawsuits spanned more than a decade, all of the matters are inextricably connected to the original 2003 crop claim.

- When the *POCO* 2014 action was filed, Great American gave notice to FAMIC immediately. While the *POCO* 2014 action was pending, Great American and defense counsel, Sanders & Associates LPA, kept FAMIC informed of developments.

- The Transition Services Agreement requires Great American to service Prior Business "in the same manner as comparable business was serviced by FAMIC in the ordinary course of FAMIC's business prior to the Effective Date . . . and in

compliance with applicable law." Transition Services Agreement ¶ 2. Prior to the Effective Date, FAMIC defended all lawsuits relating in any way to claims presented under insurance policies it had issued. Therefore, paragraph 2 of the Transition Services Agreement makes it clear that Great American was obligated to defend the *POCO* 2014 action. Since the criminal proceeding and the *POCO* 2014 action flowed directly from the 2003 crop loss claim, paragraph 2 of the Transition Services Agreement shows that Great American was obligated to defend the *POCO* 2014 action relating to Prior Business.

- Similar provisions are contained in paragraph 3 of the Transition Services Agreement, including that Great American was to provide complete handling of all loss adjustments, investigations, compliance issues, and settlements of reported claims in accordance with applicable laws; Great American was to engage the services of persons or firms outside of its organization to work in connection with the investigations and adjustment of claims and to incur other Allocated Loss Adjustment Expense; and Great American was to promptly provide FAMIC with copies of any inquiry, complaint, or request received from, among others, a claimant, "relating to a claim under Prior Business serviced under this Transition Services Agreement, consulting as necessary with FAMIC to prepare a response." Great American complied with all of these provisions of the Transition Services Agreement.

- Paragraph 4 of the Transition Services Agreement requires FAMIC to promptly pay for all adjustments and settlements of claims relating to Prior Business and all costs and expenses incurred by Great American in connection therewith.

- In addition, paragraph 5 of the Transition Services Agreement calls for an operating charge of 25% of the total costs and expenses to be paid by FAMIC to Great American.

- The course of dealing between FAMIC and Great American during the pendency of the *POCO* 2014 action reveals that FAMIC was well aware of its duty to reimburse Great American under the Transition Services Agreement.

32. FAMIC has breached the terms and conditions of the Transition Services Agreement by not reimbursing Great American all the fees and expenses incurred in the defense of the *POCO* 2014 action or the operating charge.

33. FAMIC has disregarded the course of dealing between the parties by not reimbursing Great American for all the fees and expenses incurred in the defense of the *POCO* 2014 action or the operating charge.

34. By reason of FAMIC's breach of express duties under the Transition Services Agreement and those acknowledged by the course of dealing, Great American has incurred fees and expenses in the defense of the *POCO* 2014 action, and the operating charge. Great American is entitled to money damages in an amount according to proof.

## SECOND CAUSE OF ACTION – PROMISSORY ESTOPPEL

35. Great American realleges, as if fully restated herein, each of the preceding paragraphs.

36. Great American has incurred and will incur fees and expenses in the defense of the *POCO* 2014 action.

37. As set forth in paragraph 25 above, during the pendency of the *POCO* 2014 action, Great American caused FAMIC to be kept informed of developments. On several

occasions during the pendency of the *POCO* 2014 action, FAMIC acknowledged its obligation to reimburse Great American for all the fees and expenses incurred in the defense of the *POCO* 2014 action.

38. FAMIC made a promise to Great American that was clear and unambiguous in its terms, Great American relied on the promise, the reliance was reasonable and foreseeable, and Great American was injured by the reliance.

39. By virtue of the foregoing, FAMIC is estopped to deny that it is obligated to reimburse Great American for all fees and expenses incurred or to be incurred in the defense of the *POCO* 2014 action. Great American is entitled to money damages in the amount according to proof.

## THIRD CAUSE OF ACTION – UNJUST ENRICHMENT

40. Great American realleges, as if fully restated herein, each of the preceding paragraphs.

41. Great American has incurred and will incur fees and expenses in the defense of the *POCO* 2014 action.

42. Great American conferred a benefit upon FAMIC, FAMIC had knowledge of the benefit, and FAMIC retained the benefit under circumstances in which it would be unjust to do so without payment to Great American.

43. Inasmuch as the fees and expenses incurred in the defense of the *POCO* 2014 action were for the benefit of FAMIC, since the claims at issue all arose from the original handling of the 2003 crop loss, FAMIC would be unjustly enriched unless it were required to reimburse Great American for all fees and expenses incurred or to be incurred in the defense of

the *POCO* 2014 action. Great American is entitled to money damages in an amount according to proof.

### FOURTH CAUSE OF ACTION – EQUITABLE INDEMNITY

44. Great American realleges, as if fully restated herein, each of the preceding paragraphs.

45. FAMIC has an equitable obligation to indemnify Great American because all fees and expenses incurred by Great American in the defense of the *POCO* 2014 action were due to the acts, omissions, or failure of FAMIC, which was responsible for the alleged damages at issue in the *POCO* 2014 action. Great American, therefore, is entitled to equitable indemnity for all fees and expenses incurred or to be incurred in the defense of the *POCO* 2014 action. Great American is entitled to indemnity in an amount according to proof.

### FIFTH CAUSE OF ACTION – QUANTUM MERUIT

46. Great American realleges, as if fully stated herein, each of the preceding paragraphs.

47. Great American has caused legal services to be performed and has incurred and will incur fees and expenses for the benefit of FAMIC in the defense of the *POCO* 2014 action with FAMIC's knowledge and at its direct or tacit request.

48. FAMIC promised to pay Great American the reasonable value for the legal services to be performed and the fees and expenses to be incurred in the defense of the *POCO* 2014 action.

49. Great American has requested payment from FAMIC for the reasonable value of the legal services which Great American paid for and the reasonable value of the fees and expenses it has incurred in the defense of the *POCO* 2014 action. However, FAMIC has refused,

Case: 1:18-cv-00008-MRB Doc #: 1 Filed: 01/04/18 Page: 17 of 19  PAGEID #: 17

and continues to refuse, to pay Great American for the services rendered and fees and expenses incurred.

50. As a direct and proximate result of FAMIC's failure to pay for the legal services and fees and expenses incurred or to be incurred, Great American has suffered money damages in an amount according to proof.

### RELIEF REQUESTED

1. Great American incorporates herein by reference, as if fully restated herein, each of the preceding paragraphs;

2. On the first cause of action, by reason of FAMIC's breach of express duties under the Transition Services Agreement and those acknowledged by the course of dealing, an award of money damages in the full amount of fees and expenses incurred or to be incurred in the future by Great American in the defense of the *POCO* 2014 action, and the operating charge;

3. On the second cause of action, under the doctrine of promissory estoppel, an award of money damages in the full amount of fees and expenses incurred or to be incurred in the future by Great American in the defense of the *POCO* 2014 action, and the operating charge;

4. On the third cause of action, under the doctrine of unjust enrichment, for reimbursement by FAMIC for all fees and expenses incurred or to be incurred in the future by Great American in the defense of the *POCO* 2014 action;

5. On the fourth cause of action, for equitable indemnity by FAMIC for all fees and expenses incurred or to be incurred in the future by Great American in the defense of the *POCO* 2014 action;

6. On the fifth cause of action, an award in quantum meruit for all fees and expenses incurred or to be incurred in the future by Great American in the defense of the *POCO* 2014 action;

7. For an award to Great American of its costs incurred herein; and

8. For such other and further relief as the Court deems just and proper.

Date: January 4, 2018          Respectfully submitted,

/s/ Rachael A. Rowe
Rachael A. Rowe, Trial Attorney
Ohio Bar No. 0066823
Darcy A. Watt
Ohio Bar No. 0092777
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, OH 45202
Tel: (513) 579-6486
Fax: (513) 579-6457
E-mail: rrowe@kmklaw.com
E-mail: dwatt@kmklaw.com

Attorneys for Plaintiff
GREAT AMERICAN INSURANCE COMPANY

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Great American Insurance Company hereby demands a jury trial on all issues so triable.

Date: January 4, 2018　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ Rachael A. Rowe
　　　　　　　　　　　　　　　　　　Rachael A. Rowe, Trial Attorney
　　　　　　　　　　　　　　　　　　Ohio Bar No. 0066823
　　　　　　　　　　　　　　　　　　Darcy A. Watt
　　　　　　　　　　　　　　　　　　Ohio Bar No. 0092777
　　　　　　　　　　　　　　　　　　KEATING MUETHING & KLEKAMP PLL
　　　　　　　　　　　　　　　　　　One East Fourth Street
　　　　　　　　　　　　　　　　　　Suite 1400
　　　　　　　　　　　　　　　　　　Cincinnati, OH 45202
　　　　　　　　　　　　　　　　　　Tel: (513) 579-6486
　　　　　　　　　　　　　　　　　　Fax: (513) 579-6457
　　　　　　　　　　　　　　　　　　E-mail: rrowe@kmklaw.com
　　　　　　　　　　　　　　　　　　E-mail: dwatt@kmklaw.com

　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　GREAT AMERICAN INSURANCE COMPANY

8085226.1